1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

12

13

14

15

16

17

| | |
|---|---|
| JAMES M. MILLIKEN,<br><br>Plaintiff,<br><br>v.<br><br>C. STURDEVANT,[1] et al.,<br><br>Defendants. | Case No. 18-CV-05326-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 45 |

18   Plaintiff is a California prisoner incarcerated at California State Prison, Sacramento ("CSP-

19   Sac"). Plaintiff was previously incarcerated at Pelican Bay State Prison ("PBSP") and California

20   State Prison, Corcoran ("CSP-Cor"). *See* Dkt. No. 1. Pursuant to 42 U.S.C. § 1983, plaintiff filed

21   a *pro se* civil rights complaint alleging that he had been improperly placed in solitary confinement

22   at PBSP. *See id.* The Court dismissed plaintiff's complaint with leave to amend, *see* Dkt. No. 6,

23   and plaintiff filed a First Amended Complaint ("FAC"), *see* Dkt. No. 9.

24

25

26

27

28

---

[1] This defendant was originally identified as "C. Studervant." Dkt. No. 1. Subsequent filings reveal that the correct name for this defendant is "C. Sturdevant." *See* Dkt. No. 45, Ex. B (administrative materials referring to "Sturdevant"). The Court *sua sponte* corrects this defendant's name in the case caption. *See* Fed. R. Civ. P. 60(a) ("The court may correct a clerical mistake . . . whenever one is found in . . . the record."). The Clerk shall correct the docket.

1

The Court screened plaintiff's FAC pursuant to 28 U.S.C. § 1915A and found plaintiff had alleged cognizable claims that his placement in solitary confinement (1) violated the First Amendment, (2) violated the Eighth Amendment, and (3) violated the Fourteenth Amendment. *See* Dkt. No. 11 ("Screening Order") at 2.  Plaintiff claimed that eleven defendants, all PSBP employees, were responsible for these alleged wrongs: Correctional Officers C. Sturdevant ("Officer Sturdevant") and D. Bradbury ("Officer Bradbury"); Sergeants M.K. Anderson ("Sergeant Anderson") and J. Schrag ("Sergeant Schrag"); Correctional Counselor II A. Bond ("Counselor Bond"); Institutional Gang Investigators C. Parry ("Investigator Parry"), J. Puente ("Investigator Puente"), and A. Schaad ("Investigator Schaad") (together, "Investigators"); Classification Staff Representative D. Garcia ("Representative Garcia"); Senior Hearing Officer Captain D. Wilcox ("Captain Wilcox"); and Chief Deputy Warden R.K. Bell ("Chief Deputy Warden Bell") (collectively, "defendants").  *See* FAC at 2.

Defendants moved for summary judgment ("MSJ").  Dkt. No. 45.  After two extensions of time, plaintiff filed an Opposition ("Opposition").  Dkt. No. 52.  Defendants timely filed a Reply ("Reply").  Dkt. No. 55.  For the reasons stated below, the Court **GRANTS** in part and **DENIES** in part defendants' MSJ.

I.      **BACKGROUND**

A.      **Discussion Of Evidence To Be Considered**

Defendants filed an Answer which objected to certain statements within the FAC.  See generally, Dkt. No. 36 ("Answer").  In addition, defendants' Reply contains numerous objections to the statements in the declaration plaintiff attached to his Opposition ("Plaintiff's Declaration").  *See* Reply at 8-14.  Accordingly, before the Court provides the factual background and addresses the MSJ, the Court will clarify what evidence it considers in this Order.

1.      **Defendants' Evidence**

Along with the MSJ, defendants filed declarations from non-defendant Deputy Attorney General Tartaglio, *see* Dkt. No. 45-3 ("Tartaglio Declaration"), and defendant Chief Deputy Warden Bell, *see* Dkt. No. 45-4 ("Bell Declaration"), as well as exhibits to these declarations.

Case No. 18-CV-05326-LHK
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.

United States District Court
Northern District of California

Plaintiff did not object to these materials, *see generally*, Opp. & Pl.'s Decl., and so the Court considers them in their entirety.

### 2.    Plaintiff's Evidence

#### a.    First Amended Complaint

As discussed *infra* I.A.2.b,  both plaintiff and defendants rely on the FAC and exhibits thereto in making arguments in favor of and against the MSJ.  Accordingly, the Court addresses defendants' objections to the FAC.

Plaintiff attached thirty exhibits to the FAC.  *See* Dkt. No. 9, Exs. A-AE.  Defendants do not challenge Exhibits A-F or Exhibits H-AE.  *See generally*, Dkt. No. 36 ("Answer").  Accordingly, the Court considers those documents in their entirety.

Exhibit G to the FAC is a declaration filed by another inmate that purports to summarize a conversation between that inmate and Sergeant Anderson.  *See* FAC, Ex. G.  Defendants argue that Exhibit G is an inaccurate summary of that conversation.  *See* Ans, ¶¶ 14, 16.  The Court will consider Exhibit G in its entirety for the purposes of summary judgment because factual disputes must be construed in plaintiff's favor at summary judgment.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (stating that, at summary judgment, courts must view the evidence in the light most favorable to the nonmoving party).

#### b.  Opposition To Instant Motion

Along with the Opposition, plaintiff filed a declaration ("Plaintiff's Declaration") which purports to summarize the relevant facts.  *See generally*, Dkt. No. 53.  Defendants object to numerous portions of Plaintiff's Declaration.  Reply at 8-14.

Defendants' six pages of objections are too numerous to recount individually, and so the Court will address the objections as categories.  Taking each category in turn, defendants' objections to speculative and improper expert testimony are sustained, but defendants' objections to hearsay and to plaintiff's reliance on the pleadings are overruled.

In multiple paragraphs of Plaintiff's Declaration, plaintiff purports to relate the opinion or motivation of another person.  *See, e.g.*, Pl.'s Decl. ¶ 8 (stating what the Investigators were "only

3

United States District Court
Northern District of California

concerned with"); *see also id.* ¶¶ 23, 31, 41, 48, 49, 52, 53, 78, 94, 106.  Defendants object to such evidence as speculative, not within plaintiff's personal knowledge, and lacking foundation.  *See* Reply at 9-14.  The Court will not consider speculative statements.  *See* Fed. R. Evid. 602 (a witness must speak from personal knowledge); Fed. R. Evid. 701(a) (allowing only testimony that is "rationally based on the witness's perception").  Accordingly, the Court will consider the challenged paragraphs only to the extent plaintiff relates facts within his personal knowledge.

In multiple paragraphs of Plaintiff's Declaration, plaintiff purports to relate the legal meaning of a document, constitutional amendment, statute, or rule.  *See, e.g.*, Pl.'s Decl. ¶ 15 (arguing that a document was a valid and enforceable contract); *see also id.*, ¶¶ 51, 52, 54, 55, 57, 59. 71, 74, 77, 79, 83, 87, 94.  Defendants object that plaintiff's analysis of these materials constitutes lay witness opinion that is not admissible under Federal Rule of Evidence 701.  *See* Reply at 9-13.  In this case, plaintiff has not argued that he is offering an expert opinion, and he has set forth no facts establishing that he would qualify as an expert of any kind.  *See generally*, FAC, Opp., & Pl.'s Decl.  Pursuant to Federal Rule of Evidence 701, a lay witness may testify only as to those opinions or inferences which are "(a) rationally based on the witness's perception, (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.  Accordingly, lay witness opinions are admissible only to the extent that they are "based upon . . . direct perception of the event, are not speculative, and are helpful to the determination" of factual issues before the jury.  *United States v. Freeman,* 498 F.3d 893, 905 (9th Cir. 2007).  The Court agrees with defendants that plaintiff's opinions about the legal meanings of documents and events do not fall within the scope of Rule 701.  Accordingly, the Court will disregard those portions of the challenged paragraphs in which plaintiff purports to state the legal meaning of a document or an event.

In Plaintiff's Declaration, plaintiff states that non-defendant Officer Rush told him of an inconsistency in the materials on which the UCC relied to validate plaintiff as a gang member.  *See* Pl.'s Decl. ¶ 78.  Defendants object that the repetition of Rush's statement is hearsay.  *See*

Case No. 18-CV-05326-LHK
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.

1    Reply at 12 (citing Fed. R. Evid. 802).  However, Federal Rule of Evidence 801 provides that a

2    statement is not hearsay if that "statement is offered against an opposing party and" "was made by

3    the party's . . . employee on a matter within the scope of that relationship and while it existed."

4    Fed. R. Evid. 801(d)(2).  Here, non-defendant Officer Rush was employed at PBSP and therefore

5    arguably an employee of Chief Deputy Warden Bell when the statement was made, and gang

6    validation proceedings appear to have been within the scope of non-defendant Officer Rush's

7    employment.  *See* Pl.'s Decl. ¶ 100 (stating that non-defendant Officer Rush was present while

8    plaintiff was interviewed as part of a debriefing process).  Accordingly, the information before the

9    Court suggests that this statement is not hearsay and may be considered at summary judgment.

10       Plaintiff states that non-defendant Officer Rush told plaintiff, that in non-defendant Officer

11   Rush's "opinion, [plaintiff] had cooperated" in the debriefing process.  *See* Pl.'s Decl. ¶ 105.

12   Defendants object that the repetition of Rush's statement is hearsay.  *See* Reply at 14 (citing Fed.

13   R. Evid. 802).  However, "[a] statement of the declarant's then-existing state of mind" is an

14   exception to the rule against hearsay.  Fed. R. Evid. 803(3).  Non-defendant Officer Rush's

15   opinion regarding plaintiff's cooperation arguably falls into this exception and may be considered

16   at summary judgment.  Moreover, factual disputes must be construed in plaintiff's favor at

17   summary judgment.  *See Leslie*, 198 F.3d at 1158 (stating that, at summary judgment, courts must

18   view the evidence in the light most favorable to the nonmoving party).

19       Finally, defendants object to plaintiff's attempt to "incorporate [his] FAC and any

20   declarations, and all exhibits" into Plaintiff's Declaration as a violation of Federal Rule of Civil

21   Procedure 56(c)(4).  *See* Reply at 14.  However, defendants rely on plaintiff's FAC and exhibits

22   throughout the MSJ and Reply rather than re-attaching independent records.  *See e.g.*, MSJ at 1

23   (relying on the FAC, FAC Exs. E & O), 2 (relying on FAC, FAC Exs. O, Q, & R), 3 (relying on

24   FAC), 4 (relying on FAC, FAC Exs. C, L), 5 (relying on FAC).  Although in an ideal world

25   plaintiff's Opposition and Plaintiff's Declaration would stand alone, the Court will not penalize

26   plaintiff for relying on the same documents cited throughout defendants' MSJ.  Accordingly,

27   defendants' objection is overruled.

28

5

Case No. 18-CV-05326-LHK
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.

United States District Court
Northern District of California

United States District Court
Northern District of California

### B.  Factual Background

The following facts, given in chronological order, are viewed in the light most favorable to plaintiff.  *See Leslie*, 198 F.3d at 1158 (at summary judgment, courts view the evidence in the light most favorable to the nonmoving party).  Unless otherwise indicated, the facts are undisputed.

In May 2017, plaintiff was housed with general population prisoners at PBSP.  MSJ at 1.  On May 2, 2017, plaintiff asked to be moved to a sensitive needs yard ("SNY").  FAC ¶ 1.  As defendants explain, "[SNY]s house inmates who would be in danger if placed on a General Population Yard."  MSJ at 1.

Following his request, plaintiff was taken to "a holding cage."  FAC ¶ 1.  Plaintiff was approached by Investigator Parry, Investigator Puente, and Investigator Schaad , who asked plaintiff "about inmates, inmate activity, and the whereabouts of contraband."  *Id*.  Plaintiff was unable to provide "information of value."  *Id*.  Plaintiff stated that, when he was unable to provide valuable information, the Investigators "became irritated and began raising their voices" and threatened to "throw [his] ass back out on [general population]."  *Id*.  Defendants deny that the Investigators made threats.  *See* Ans. ¶ 1.

In the FAC, plaintiff stated that he "was placed in solitary confinement" after this interaction with the Investigators.  FAC ¶¶ 1, 2.  Defendants object that plaintiff was placed in administrative segregation ("Ad-Seg"), not solitary confinement.  *See* Ans. ¶¶ 2, 33, 75.  In the Opposition, plaintiff states that he was "retained in Administrative Segregation . . . for twenty-seven (27) months."  Opp. at 1; *see also id*. at 2, 5 16, 17, 18, 21, 22, 23, 25.

Two days later, on May 4, 2017, Investigator Puente and Investigator Schaad had a second interaction with plaintiff.  FAC ¶ 3.  Plaintiff again failed to provide valuable information.  *See id*.  Plaintiff stated that, when he failed for a second time to provide valuable information, Investigator Puente threatened to "validate" plaintiff as a gang member "so [plaintiff will] have to debrief. . . . You will sit here or go to the [secured housing unit] until you debrief."  *Id*.  Plaintiff asked if his "options are to snitch or be punished," and states that defendants confirmed that those were his options.  *Id*.  Defendants argue that these threats never took place.  Ans. ¶ 3.

6

United States District Court
Northern District of California

1    On May 11, 2017, an Institutional Classification Committee ("ICC") met to review

2    plaintiff's housing request. *Id*. ¶ 10.  Plaintiff had a hearing with the ICC.  *Id*.  In that hearing,

3    Chief Deputy Warden Bell "explained to [plaintiff] that he will be held in ASU for 60 days" while

4    staff reviewed his request for a transfer to SNY.  *Id*.; *see also* FAC, Ex. E (stating that plaintiff

5    would be held in Ad-Seg for 60 days).  Thus, the review was expected to conclude on July 10,

6    2017.  This review would involve staff "review[ing] [plaintiff's] C-file, evaluat[ing] enemy

7    concerns, and determin[ing] where [plaintiff] can be safely housed."  *Id*.  This review was to be

8    conducted by Sergeant Schrag.  FAC, Ex. E at 2.

9    On May 22, 2017, Officer Sturdevant told plaintiff that Officer Sturdevant had found

10   artwork related to a prison gang in plaintiff's property.  FAC ¶ 11.  Plaintiff states that he told

11   Officer Sturdevant that he "was never in possession of any [gang] art work," and that plaintiff

12   believed that "he was be[ing] framed."  *Id*. ¶ 12.  Defendants argue that plaintiff did not dispute

13   possession of the gang artwork during the May 22, 2017 conversation between plaintiff and

14   Officer Sturdevant.  Ans. ¶ 12.  However, although disciplinary charges were initially filed for

15   possession of this artwork, *see* FAC ¶ 22, the charges were dismissed, and plaintiff was found not

16   guilty.  *See* MSJ at 4 (stating the charges were dismissed because PBSP did not meet deadlines);

17   *see also* FAC ¶ 24 (stating that plaintiff was found "not guilty based on time frame/constraints and

18   due process"); FAC, Ex. L at 11 ("Subject was found Not Guilty.").

19   On August 3, 2017, plaintiff attended another hearing with the ICC.  FAC ¶ 30.  In that

20   hearing, the ICC explained that plaintiff was under investigation for suspected ties to a prison

21   gang.  FAC, Ex. O at 17.  The ICC's report of that hearing states that Sergeant Schrag had found

22   plaintiff "uncooperative" in his review and had recommended plaintiff be returned to general

23   population.  *See id*.  However, the ICC was concerned that it would be "unsafe" to return plaintiff

24   to general population.  *See id*.  Instead, the ICC decided that "retention in ASU [was] still

25   warranted," while plaintiff's suspected gang ties were investigated.  *Id*.  Plaintiff informed the ICC

26   that he believed it would violate the settlement in *Ashker v. Brown*, No. 09-5796-CW (N.D. Cal.),

27   for plaintiff to be "retained pending validation" of gang ties.  FAC ¶ 30.  The ICC decided to

28

7

1    extend plaintiff's retention in Ad-Seg by 90 days – to November 1, 2017 – to investigate

2    plaintiff's alleged gang ties.  *See* FAC, Ex. O ("refer to CSR for 90 day ASU extension").

3            On August 10, 2017, plaintiff had a third hearing with the ICC.  *See* FAC ¶ 31.  The ICC

4    confirmed that it had decided to retain plaintiff in Ad-Seg.  The ICC updated the extension of

5    plaintiff's retention in Ad-Seg, to run for 90 days from August 10, 2017.  *See* FAC, Ex, O.

6            Plaintiff states that, as of August 10, 2017, "the validation process [to investigate

7    plaintiff's suspected gang ties] had not even begun yet."  FAC ¶ 31.  Plaintiff did not receive a

8    "validation packet" until August 15, 2017.  *Id*. ¶ 34.  Plaintiff states that "the validation

9    investigation was complete" as of September 14, 2017.  *Id*.

10           On September 22, 2017, Classification Staff Representatives ("CSR") audited plaintiff's

11   case.  FAC ¶ 35.  The auditor informed the PBSP ICC that "ASU retention pending validation is

12   inconsistent with" rules governing CDCR, "and is not an approved reason to retain the inmate i[n]

13   segregated housing."  FAC, Ex. R.  The auditor gave the PBSP ICC 30 days to "clearly

14   document[]" why plaintiff was being retained in Ad-Seg.  *Id*.

15           On October 26, 2017 – four days after the conclusion of the 30-day extension granted by

16   CSR – plaintiff attended a fourth hearing with ICC.  FAC ¶ 37.  At that hearing, the ICC

17   recommended plaintiff be transferred to an SNY at another prison.  *Id*.

18           On October 31, 2017, it was recommended that plaintiff be validated as a member of the

19   Aryan Brotherhood Prison Gang.  *Id*. ¶ 38; *see also* MSJ at 2.  Because of this pending validation,

20   plaintiff's transfer to an SNY yard at another prison was cancelled.  FAC ¶ 39.

21           Plaintiff states that CDCR regulations require a prison to hold a hearing with the prisoner

22   and the Unit Classification Committee ("UCC") within 30 days of a prisoner being validated as a

23   gang member.  *Id*. ¶ 40 (citing C.C.R. tit. 15 § 3378.2(d).  Plaintiff did not meet with the UCC

24   until January 26, 2018 – 87 days after he was validated.  *Id*. ¶ 42.  In this hearing, plaintiff was

25   "found guilty" of being affiliated with the Aryan Brotherhood.  *Id*. ¶ 52.

26           Plaintiff was transferred to CSP-Cor on February 23, 2018.  *See* FAC, Ex. R. at 6.

27

28
                                                    8

1    Plaintiff remained at CSP-Cor until July 19, 2019, when plaintiff was transferred to CSP-

2  Sac.  MSJ at 22.  On August 14, 2019, plaintiff was moved from Ad-Seg to "a non-SNY facility,

3  which houses inmates with same or similar case factors as inmates typically housed in an SNY

4  facility."  *Id*.  Thus, plaintiff remained in Ad-Seg for twenty-seven months, from May 2, 2017,

5  when he initially requested a transfer to SNY at PBSP, until he was placed in a non-SNY facility

6  at CSP-Sac on August 24, 2019.

7    **C.    Procedural Background**

8    Plaintiff filed the instant civil rights action on August 23, 2018.  *See* Dkt. No. 1 at 3

9  (signed and dated August 23, 2018).  The Court dismissed plaintiff's complaint with leave to

10  amend.  *See* Dkt. No. 6.

11    Plaintiff filed a first amended complaint ("FAC").  *See* Dkt. No. 9.  The Court screened

12  plaintiff's FAC ("Screening Order") and found that plaintiff "stated cognizable claims that

13  defendants have violated his rights under the First, Eighth, and Fourteenth Amendment to the

14  United States Constitution."  Dkt. No. 11 at 2.  Specifically, the Court found plaintiff had

15  sufficiently alleged that defendants placed him in solitary confinement as an act of retaliation; that

16  plaintiff's long stay in solitary confinement was a disproportionate punishment; and that plaintiff

17  was deprived of meaningful periodic review of his solitary confinement.[2]  *See id*.

18    The Court ordered the Clerk of the Court to serve the eleven defendants with a Notice of

19  Lawsuit and Request for Waiver of Service, the FAC and exhibits, and the Screening Order.  *See*

20  *id*. at 3.  Ten defendants returned an executed waiver of service.  *See* Dkt. Nos. 25-34.

21  Classification Staff Representative D. Garcia ("Representative Garcia") did not return a waiver of

22  service, *see generally*, Dkt.  In their Answer to the FAC ("Answer"), defendants stated that they

23  did not know Representative Garcia's whereabouts, and that Representative Garcia had not been

24  served.  *See* Dkt. No. 36 at 1.  Despite this notice that plaintiff needed to provide more information

25

26  ───────────────

[2] In the Screening Order, the Court inadvertently referred to plaintiff's claim for cruel and unusual
27  punishment as deriving from the 14th Amendment, and his claim that he was deprived of
meaningful periodic review as deriving from the 8th Amendment.  *See* Screening Order at 2.  As
defendants recognized, this error reversed the two amendments.  *See* MSJ at 17.

28

Case No. 18-CV-05326-LHK
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.

United States District Court
Northern District of California

1    regarding Representative Garcia before Representative Garcia could be served, plaintiff did not

2    provide any additional information to assist in identifying Representative Garcia, did not provide

3    an address for Representative Garcia, and did not show cause for plaintiff's failure to provide that

4    information.  *See generally*, Dkt.  Accordingly, Representative Garcia is DISMISSED from this

5    action without prejudice.  *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days

6    after the complaint is filed, the court . . . *must* dismiss the action without prejudice against that

7    defendant . . . .").

8            Defendants filed a motion for summary judgment ("MSJ"), together with exhibits, on

9    October 4, 2019.  *See* Dkt. No. 45.  Plaintiff filed an opposition to the MSJ ("Opposition"),

10   together with a declaration ("Plaintiff's Declaration") on January 30, 2020.  *See* Dkt. No. 52.  On

11   February 20, 2020, defendants timely filed a reply ("Reply") to the Opposition.  *See* Dkt. No. 55.

                               **1.      Events And Relief At Issue**

13           In the FAC, plaintiff discussed events spanning from May 2, 2017 to February 15, 2018,

14   *see* FAC ¶¶ 1-64, and requested monetary relief and an injunction ordering CDCR to expunge

15   plaintiff's gang validation from his file, *see* FAC at 41.

16           In the MSJ, defendants argued that any implied request for an injunction ordering

17   plaintiff's transfer from Ad-Seg to SNY would be improper because, after the FAC was filed,

18   plaintiff was transferred out of Ad-Seg.  *See* MSJ at 8.  Defendants also argued that, because

19   plaintiff was re-validated as a gang member in June 2019, any expungement of the gang validation

20   conducted at PBSP would be moot.  *See id*.  Plaintiff agrees that any request to be transferred from

21   Ad-Seg to SNY is moot.  *See* Opp. at 9-10.  Plaintiff also states that "[t]he re-validation was

22   committed by another prison in another United States District Court's area, so Plaintiff is dealing

23   with those issues there."  *See id*. at 10.

24           The Court agrees that because plaintiff is no longer in Ad-Seg, any implied request to be

25   transferred from Ad-Seg is moot.  The Court agrees with defendants that, in light of plaintiff's re-

26   validation by another prison, the request to expunge plaintiff's validation at PBSP is moot.

27

28
     Case No. 18-CV-05326-LHK
     ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendants argue, and plaintiff appears to concede, that plaintiff's initial placement in Ad-

2  Seg was appropriate.  *See* MSJ at 3 (arguing that "[p]laintiff's primary grievance" concerns

3  hearings on and after August 3, 2017); *see also* FAC ¶ 66 (stating that plaintiff's life was in danger

4  in general population from the moment plaintiff requested placement in SNY); *see also* Tartaglio

5  Decl., Ex. A at 47:25 to 48:4 ("The fact that I request[ed] SNY literally puts my life [ ] in

6  danger."), 102:22-23 ("If I go to B Yard, which is a hundred yards . . . I'd be murdered

7  instantly.").  Accordingly, the Court examines only whether plaintiff's retention in Ad-Seg on and

8  after the August 3, 2017 ICC hearing was appropriate.

9    Plaintiff sues only defendants who were employed at PBSP and complains only of events

10  that occurred at PBSP.  *See* FAC at 2; *see generally, id.*  Moreover, excerpts from plaintiff's

11  central file, attached as an exhibit to the MSJ, reveal that CSP-Cor placed plaintiff in Ad-Seg so

12  that plaintiff could debrief, and re-validated plaintiff as a gang associate on June 20, 2019.  *See*

13  Tartaglio Decl., Ex. B at 5, 8.  Plaintiff does not complain of these separate actions in the FAC.

14  *See generally*, FAC (discussing events on or before February 15, 2018).  Accordingly, events at

15  CSP-Cor are not at issue in this litigation.

16    The relief and events at issue are thus: plaintiff's request for monetary damages for his

17  retention in PBSP's Ad-Seg between August 3, 2017 and plaintiff's transfer to CSP-Cor on

18  February 23, 2018.  *See* FAC, Ex. R. at 6.

19  **II.    LEGAL STANDARD**

20    Summary judgment is proper where the pleadings, discovery and affidavits show that there

21  is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a

22  matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of

23  the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a

24  material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for

25  the nonmoving party. *See id.*

26    A court will grant summary judgment "against a party who fails to make a showing

27  sufficient to establish the existence of an element essential to that party's case, and on which that

28
Case No. 18-CV-05326-LHK
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.

party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of identifying portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.*  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *See id.* at 324 (quotations omitted).

Once the burden shifts to the non-moving party, that party "must show more than the mere existence of a scintilla of evidence."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252).  "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.

It is not the task of the district court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Plaintiff has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  *Id.*  "The district court need not examine the entire file for evidence establishing a genuine issue of fact." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29, 1031 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a district court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence).

A court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence on a disputed material fact.  *See T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party.  *See id.* at 631.

United States District Court
Northern District of California

### III.   DISCUSSION

Plaintiff alleges that defendants violated his rights under the First, Eighth, and Fourteenth Amendments.  Specifically, plaintiff alleges that defendants retained him in Ad-Seg in retaliation for refusing to "snitch," in violation of his First Amendment rights; that his prolonged retention in Ad-Seg was a disproportionate punishment, in violation of his Eighth Amendment rights; and that defendants violated due process when they decided to retain plaintiff in Ad-Seg, in violation of his Fourteenth Amendment rights.

Defendants counter that plaintiff cannot state a claim for violation of the First Amendment because there is no First Amendment right not to "snitch"; that plaintiff's claim for violation of the Eighth Amendment fails because plaintiff was not being punished when he was placed in Ad-Seg; and that plaintiff was given all due process required under the Fourteenth Amendment when defendants decided to retain him in Ad-Seg.

The Court will discuss each claim and argument in turn.

### A.   Plaintiff's First Amendment Claim Fails.

Plaintiff alleges that defendants unlawfully retaliated against plaintiff by causing him to be held in solitary confinement. As noted *supra*, defendants argue that plaintiff was held in Ad-Seg, which differs from solitary confinement.  This difference is not material to the First Amendment analysis but will be discussed *infra*.  Plaintiff alleges that this retaliation was motivated by plaintiff's refusal to inform on other inmates during a debriefing interview.   FAC ¶¶ 69-74. Defendants argue that plaintiff fails to state a claim for First Amendment retaliation because refusing to inform on other inmates is not "protected conduct" under the First Amendment. *See* MSJ at 9-10.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted);

13

*accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline).  Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84 (1977). Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest.  *See Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence). The prisoner bears the burden of pleading and proving absence of legitimate correctional goals for the conduct of which he complains. *Pratt*, 65 F.3d at 806. At that point, the burden shifts to the prison official to show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose. *See Schroeder v. McDonald*, 55 F.3d 454, 461–62 (9th Cir. 1995) (defendants had qualified immunity for their decision to transfer prisoner to preserve internal order and discipline and maintain institutional security).

Here, plaintiff's First Amendment claim fails because plaintiff cannot show that his refusal to debrief was constitutionally protected, and so does not fulfill the third element of a retaliation claim.

First, the Ninth Circuit has suggested in a prisoner's civil rights case that refusing to provide information is not conduct protected by the First Amendment.  In *Resnick v. Hayes*, the Ninth Circuit considered a claim that the plaintiff was "confined . . . in the prison's Special Housing Unit (SHU) pending a disciplinary hearing." 213 F.3d 443, 445 (9th Cir. 2000).  Like the

14

United States District Court
Northern District of California

instant case, Resnick argued that his disciplinary hearing had been postponed, and his confinement

in the SHU thus prolonged, "so that [the Warden] could pressure Plaintiff into divulging

information about correctional officers who were bringing narcotics into the prison." *Id*. at 446.

"In essence, [Resnick] claim[ed] that Defendants delayed his hearing and thereby kept him

confined in the SHU in retaliation for his refusal to provide them with information regarding

correctional officers who were bringing drugs into the prison." *Id*. at 449.  The Ninth Circuit

affirmed the district court's decision to dismiss the case at the pleading stage, noting, among other

defects, that Resnick had not identified any injury:  "Plaintiff did not snitch, . . .  Plaintiff has not

alleged that his First Amendment rights have been chilled or infringed." *Id*.  The Ninth Circuit's

conclusion suggests that Resnick's First Amendment rights were not implicated by his refusal to

snitch.  *See Wheat v. Cty. of Alameda*, No. C 11-4509 MEJ, 2012 WL 966949, at *3 (N.D. Cal.

Mar. 21, 2012) (distinguishing *Resnick* from the case at bar, because Resnick did not involve a

person "exercising his First Amendment rights"); *see also Mullins v. Stewart*, 252 F. App'x 837,

838 (9th Cir. 2007) (where plaintiff was held in administrative segregation, and the only way to be

released was to debrief, this was "really a Fifth Amendment self-incrimination claim that

debriefing did not implicate").

  Second, in a non-prisoner case, the Ninth Circuit expressly found that "[t]here is no

constitutional right not to 'snitch.'"  *United States v. Paguio*, 114 F.3d 928, 930 (9th Cir. 1997)

(citing *United States v. Gardner,* 611 F.2d 770, 773 (9th Cir. 1980)).  The United States Supreme

Court has held that, "[i]n the First Amendment context, . . . a prison inmate *retains* those First

Amendment rights that are not inconsistent with his status as a prisoner . . . ." *Pell v. Procunier*,

417 U.S. 817, 822 (1974) (emphasis added).  Thus, the scope of a prisoner's First Amendment

rights is equal to or less than the scope of non-prisoners' First Amendment rights.  *See id*.  If,

under *Paguio*, a non-prisoner has "no constitutional right not to 'snitch,'" then neither does a

prisoner.  To conclude otherwise would be to grant prisoners within the Ninth Circuit greater First

Amendment rights than those given to non-prisoners.  Indeed, district courts have applied *Paguio*

to civil rights cases from prisoners, and construed *Paguio* to mean that a prisoner's refusal to

15

snitch is not protected conduct.  *See Elliott v. Caballero*, No. 19-CV-06005-PJH, 2020 WL 587198, at *2 (N.D. Cal. Feb. 6, 2020) (dismissing retaliation claim, where prisoner alleged he was retaliated against for refusing to snitch because First Amendment rights were not implicated).[3]

Finally, defendants are entitled to qualified immunity on plaintiff's First Amendment retaliation claim.  Government officials are entitled to qualified immunity from suit if the officials did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  A right is clearly established if it was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Although case law need not be directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam).  Here, as discussed above, there is substantial case law at the trial and appellate levels suggesting that plaintiff's refusal to debrief was not protected by the First Amendment.  Accordingly, a reasonable official would not have understood that retaining plaintiff in Ad-Seg for failing to debrief violated plaintiff's constitutional rights.

Because plaintiff cannot show that refusing to snitch is constitutionally protected activity, plaintiff's First Amendment claim fails.  Accordingly, the Court GRANTS defendants' motion for summary judgment as to plaintiff's First Amendment claim.

---

[3] *See also  Mora-Contreras et al., v. Peters, et al.*, No. 6:18-CV-00678-SB, 2020 WL 2089479 at *5 (D. Or. Apr. 30, 2020) ("[T]he Ninth Circuit has held that 'there is no constitutional right not to snitch.'"); *see also Garland v. Redding*, No. CV 16-1428-FMO (KK), 2016 WL 1222202, at *4 (C.D. Cal. Mar. 28, 2016) ("Plaintiff fails to show his refusal to debrief is protected conduct."); *Buchanan v. Garza*, No. 08CV1290 BTM WVG, 2012 WL 1059894, at *6 (S.D. Cal. Mar. 27, 2012) (noting that "refusal to 'snitch' is not considered 'protected conduct,'" but finding plaintiff had alleged other bases for retaliation); *Williams v. Foote*, No. CV 08-2838-CJC JEM, 2011 WL 6968033, at *15 (C.D. Cal. Oct. 5, 2011) ("choosing not to snitch is not protected conduct"); *Guillen v. Fox*, No. 1:03-CV-06004-LJO, 2011 WL 1134459, at *3 (E.D. Cal. Mar. 28, 2011) (same); *Dixon v. Gonzales*, No. 1:09-CV-00172-OWW-DLB-PC, 2009 WL 3416005, at *3 n.1 (E.D. Cal. Oct. 21, 2009) (same); *Simpson v. Feltsen*, No. 2:09CV00302MSB, 2010 WL 1444487, at *3 (E.D. Cal. Apr. 9, 2010) (same).

Case No. 18-CV-05326-LHK
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.

United States District Court
Northern District of California

1

United States District Court
Northern District of California

**B.      Plaintiff's Eighth Amendment Claim Fails.**

Plaintiff argues that his lengthy confinement in PBSP's Ad-Seg violated the Eighth

Amendment.  *See* FAC ¶¶ 65-68, 93-94.  Defendants argue that plaintiff cannot state a claim for

violation of the Eighth Amendment.  The Court concludes that plaintiff was confined in Ad-Seg

for administrative reasons, rather than in solitary confinement for punitive reasons.  For that

reason, defendants are correct, and plaintiff cannot state an Eighth Amendment claim.

**1.      Plaintiff Was Isolated For Administrative And Not Punitive Reasons.**

Before the Court can evaluate plaintiff's Eighth Amendment claim, the Court must resolve

the factual question of whether plaintiff was held in Ad-Seg as an administrative matter, or in

solitary confinement as a punishment.  The Court notes that plaintiff has referred to Ad-Seg and

solitary confinement interchangeably.  *See* FAC ¶¶  9, 30, 31, 33, 69, 75, 78(2), 84, 89 (stating

plaintiff was "being held in solitary confinement"); *see also id.* ¶¶ 23 (referring to being placed in

the "SHU"), 25 (same); *but see id.* ¶¶ 31, 66, 78(2) (referring to "Ad. Seg.").  In their Answer,

defendants "object[ed] to describing administrative segregation as "solitary confinement" and

"den[ied] that 'solitary confinement' is an accurate characterization or description of

administrative segregation."  Ans. ¶ 2; *see also id.* ¶¶ 33, 75 (objecting to the use of the phrase

"solitary confinement").

Although at first glance the difference between Ad-Seg and solitary confinement appears

to be an issue of semantics, the difference is material to plaintiff's Eighth Amendment claim.  As

the Ninth Circuit has explained, "California's policy of assigning suspected gang affiliates to the

SHU is not a disciplinary measure, but an *administrative strategy* designed to preserve order in the

prison and protect the safety of all inmates. Although there are some minimal legal limitations, . . .

the assignment of inmates within the California prisons is essentially a matter of *administrative*

*discretion*."  *Munoz v. Rowland*, 104 F.3d 1096, 1098 (9th Cir. 1997) (emphases added); *see also*

*Griffin v. Gomez*, 741 F.3d 10, 19 (9th Cir. 2014) (noting the difference between PBSP's Ad-Seg

and solitary confinement units, in an analysis of whether plaintiff's confinement in Ad-Seg

violated the Eighth Amendment); *see also Hewitt v. Helms*, 459 U.S. 460, 479-80 (1983) (Stevens,

17

J. dissenting) (although arguing that "in all material respects, conditions in administrative custody are the same as those in disciplinary segregation," noting that "[t]he reasons for placing one inmate in administrative and another in punitive segregation may be different"). Thus, whether plaintiff was placed in Ad-Seg or in solitary confinement reveals whether that placement was administrative or punitive. If the former, the Court must consider whether the procedure by which plaintiff was placed and retained in Ad-Seg violated plaintiff's due process rights under the Fourteenth Amendment; if the latter, the Court must also consider whether plaintiff's Eighth Amendment rights were violated. *See Ashker v. Governor of Cal.*, No. C 09-5796 CW, 2014 WL 2465191, at *3-6 (N.D. Cal. June 2, 2014) (certifying a "Due Process Class" defined as inmates sentenced to indeterminate SHU terms where "none of whom have been or will be afforded meaningful review or procedurally adequate review," and an "Eighth Amendment Class" defined as inmates imprisoned in "SHU under . . . conditions" of "deprivation of basic human needs").

Here, as explained *infra* III.B.1, it is apparent that plaintiff was placed in Ad-Seg for administrative reasons. This does not mean that plaintiff's placement and retention in Ad-Seg was appropriate, or that defendants acted reasonably. Rather, this finding means that plaintiff's retention does not state a claim under the Eighth Amendment for the reasons explained *infra* III.B.2-3. Instead, plaintiff's retention in Ad-Seg must be analyzed under the Fourteenth Amendment. *See infra* III.C.

### a. Plaintiff Does Not Carry His Burden To Show His Placement In Ad-Seg Was Punitive, Rather Than Administrative.

As the Court has stated, factual disputes must be construed in plaintiff's favor at summary judgment. *See Leslie*, 198 F.3d at 1158 (stating that, at summary judgment, courts must view the evidence in the light most favorable to the nonmoving party). If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See id*. However, the non-moving party must still identify or submit at least some competent evidence in support of his or her claim. *See Soto v. Sweetman*, 882 F.3d 865, 873 (9th Cir. 2018) (pro se inmate not entitled

18

United States District Court
Northern District of California

United States District Court
Northern District of California

1   to equitable tolling because he failed to include any allegations in his complaint that he could not

2   proceed with grievance process until after an investigation was completed; he failed to submit any

3   declaration, affidavit or other competent evidence in his opposition to summary judgment; and

4   first raised the issue in response to the district court's show cause order).

5   In the FAC, plaintiff appeared to be bringing a claim that his retention in Ad-Seg was a

6   disproportionate punishment for a rules violation.  *See* FAC ¶¶ 11, 22, 24, 50-52 (appearing to

7   argue that plaintiff was retained in solitary confinement because of a rules violation).  Specifically,

8   plaintiff stated that he had been given a Rules Violation Report ("RVR") by Officer Sturdevant for

9   possession of gang-related artwork, which plaintiff disputed possessing.  *See id.* ¶¶ 11-12, 22 .

10  Plaintiff alleged that this RVR was part of defendants' retaliation against him, and that "if

11  [plaintiff was] found guilty" of the RVR, this would delay plaintiff's transfer to SNY.  *See id.* ¶

12  23.  Although plaintiff was found not guilty of this RVR on July 17, 2017, *see id.* ¶ 24, plaintiff

13  repeatedly connected his retention in Ad-Seg to defendants' efforts to validate plaintiff as a gang

14  member.  *See id.* ¶¶ 3 ("my options are to snitch or be punished"), 23 (stating that the RVR was an

15  attempt to prolong plaintiff's retention in Ad-Seg), 25, 39, 69, 79, 80, 87, 93.  It therefore

16  appeared to the Court that plaintiff believed that his retention in Ad-Seg was punishment for the

17  alleged possession of gang-related artwork.  Plaintiff also repeatedly stated that he had been held

18  in "solitary confinement" for an unreasonable length of time.  *See id.* ¶¶ 9, 36, 69, 93.  Liberally

19  construing the FAC, as the Court is required to do in screening a pro se civil rights complaint, *see*

20  *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1988), the Court accordingly

21  found plaintiff had stated a claim for disproportionate punishment in violation of the Eighth

22  Amendment.

23  In the instant motion, defendants introduced evidence that plaintiff's placement and

24  retention in Ad-Seg were for administrative, rather than disciplinary, reasons.  <u>First</u>, defendants

25  explain in the MSJ that plaintiff was placed in Ad-Seg to protect him from attacks by general

26  population prisoners, and to protect SNY inmates from potential attacks by plaintiff.  *See* MSJ at

27  11-15.  <u>Second</u>, defendants provide admissible evidence to support this explanation, in the form of

28

19

United States District Court
Northern District of California

a declaration from Chief Deputy Warden Bell, that plaintiff was housed in Ad-Seg for administrative reasons, rather than in solitary confinement for punitive reasons. *See* Bell Decl. ¶¶ 12-19 (explaining that plaintiff was transferred to Ad-Seg for administrative and safety reasons, and "temporarily retained[ed]" there during his gang validation investigation). Excerpts from plaintiff's central file (the "File"), attached as exhibits to the MSJ, also support defendants' contention. The File repeatedly states that plaintiff's potential release from Ad-Seg, either to general population or to SNY "present[ed] an immediate threat to the safety and security of self/others, as well as [to] the security of the institution." Tartaglio Decl., Ex. B at 5, 10, 39, 43, 52. The File also states that plaintiff was placed in Ad-Seg because of an "investigation" and to "protect [the] integrity of [an] ongoing investigation," rather than as punishment. *Id.* at 4, 9, 11, 17, 18, 19, 41, 54; *see also* Bell Decl. ¶¶ 17-19, 22, 28 (stating that plaintiff was retained in Ad-Seg during an investigation into his gang ties, and while administrators evaluated appropriate housing placement in light of plaintiff's potential gang ties). Auditor notes in the File also state that plaintiff was retained in Ad-Seg while potential gang ties were being investigated. *See* Tartaglio Decl., Ex. B at 3 (noting that plaintiff's extended retention in Ad-Seg was inappropriate and informing the PBSP ICC that "[Ad-Seg] retention pending validation . . . is not an approved reason to retain the inmate i[n] segregated housing."). Thus, defendants have identified evidence that demonstrates plaintiff's placement and retention in Ad-Seg were for administrative reasons.

Once the moving party has identified evidence which shows there is no genuine issue of material fact, the nonmoving party must "by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotations omitted). The nonmoving party must identify this evidence "with reasonable particularity." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Thus, to rebut defendants' showing that plaintiff was placed in Ad-Seg for administrative purposes, plaintiff needed to present evidence that showed the placement and retention were punitive.

20

Plaintiff does not challenge defendants' representation that he was held in Ad-Seg for administrative purposes or point to any facts suggesting plaintiff's retention in Ad-Seg was punitive. *See generally*, Opp. First, it appears that in deposition plaintiff disavowed any claim that his placement and retention in Ad-Seg were punitive. *See* Tartaglio Decl., Ex. A at 108:2-13 (stating that plaintiff did not know what Rules Violation Report ("RVR") the Court was discussing in the Screening Order), 110:4-11 (stating that the June, 26, 2017 RVR did not lead to plaintiff spending additional time in Ad-Seg), 150:7-21 (same). Second, plaintiff states that he "was being retained in Ad-Seg pending validation," rather than as punishment. Pl.'s Decl. ¶ 44; *see also id*. ¶¶ 48 ("the Defendant[]s elected to retain me in Ad-Seg pending completion of the Validation process"), 49, 50. This echoes defendants' representation that plaintiff was retained in Ad-Seg because plaintiff's gang ties were being investigated, rather than because plaintiff had been found guilty of a transgression. Third, although plaintiff received a Rules Violation Report ("RVR") on June 26, 2017 for alleged possession of gang artwork, plaintiff was found not guilty of possessing such artwork, and the RVR was dismissed. *See id*. ¶¶ 29-31. Because plaintiff had been found not guilty of this offense, there was nothing for which plaintiff could be punished. *Accord* Opp. at 23-24 (arguing that if plaintiff had been found guilty of the RVR, "it *would have* resulted in being placed in a two-year step-down program . . . That *would have* been a pretty steep punishment.") (emphasis added). Fourth, plaintiff did not receive a validation hearing until January 26, 2018, and was not validated as a gang member until January 29, 2018. *See id*. ¶¶ 72, 100. Thus, if punishment were meted out for plaintiff's alleged membership in a gang, it could not have been until on or after January 29, 2018. In this litigation, however, plaintiff challenges only his retention in Ad-Seg at PBSP between August 3, 2017 and February 15, 2018. *See supra*, I.C.1. All but the last two weeks of plaintiff's time in PBSP's Ad-Seg occurred before plaintiff was validated as a gang member. Finally, plaintiff appears to concede that his isolation was administrative, rather than punitive. Plaintiff states repeatedly in the Opposition that he was "retained in Administrative Segregation." *See id*. at 1 (stating plaintiff was "retained in Administrative Segregation"); *see also id*. at 2, 5 16, 17, 18, 21, 22, 23, 25. Plaintiff argues in the

21

1  Opposition that he "remains free . . . from any serious disciplinaries since 2014," which suggests

2  that plaintiff's placement in Ad-Seg was not for disciplinary reasons.  *Id.* at 5.

3       If plaintiff had pointed to any evidence that his placement in Ad-Seg was punitive, then the

4  reason for his placement would be in dispute.  Because plaintiff does not, the Court is presented

5  with undisputed evidence from defendants that plaintiff's placement in Ad-Seg was

6  administrative.  The Court cannot ignore this undisputed evidence.  *See L. F. v. Lake Wash. Sch.*

7  *Dist. #414*, 947 F.3d 621, 625 (9th Cir. 2020) ("[A] court's obligation at the summary judgment

8  stage to view the evidence in the light most favorable to the non-movant does not require that it

9  ignore undisputed evidence produced by the movant."); *see also Wall v. County of Orange*, 364

10 F.3d 1107, 1111 (9th Cir. 2004) ("The district court may not resolve disputed issues of material

11 fact by crediting one party's version of events and ignoring another.").

12      Accordingly, the Court finds that plaintiff was held in Ad-Seg for administrative reasons,

13 not in solitary confinement for punitive reasons.

14               **2.      Because Plaintiff's Placement In Ad-Seg Was Not Punitive, He Cannot

15                         State An Eighth Amendment Claim For Disproportionate Punishment.**

16      In the Screening Order, the Court found that plaintiff had stated a cognizable claim that he

17 had been subjected to disproportionate punishment for a rules violation, in violation of the Eighth

18 Amendment.  *See* Screening Order at 2.  Because plaintiff's placement and retention in Ad-Seg

19 were not in fact punitive, this claim is no longer cognizable.

20      Defendants argue that the Court's recognition of a disproportionality claim in the

21 Screening Order "appears to have been a mistake" and "[t]he third cause of action is more

22 appropriate classified as a Due Process claim under the Fourteenth Amendment."  MSJ at 19

23 (citing case law stating that confinement in Ad-Seg does not constitute cruel and unusual

24 punishment).  However, many opinions examine whether solitary confinement may be a

25 "disproportionate" punishment for a transgressive act committed by a prisoner-plaintiff while

26 incarcerated.  *See, e.g., Griffey v. Borg*, 5 F.3d 536 (9th Cir. 1993) (unpublished) (reversing

27 district court dismissal because "a civil rights action alleging that prison officials violated

28

22

Case No. 18-CV-05326-LHK
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.

[plaintiff's] constitutional rights by requiring him to serve a term in administrative segregation disproportionate to the disciplinary charge of which he was found guilty . . . should have been allowed to proceed."); *Toussaint v. Rushen*, 553 F. Supp. 1365, 1382 (N.D. Cal. 1983) ("Confinement in administrative segregation may be unconstitutional if imposed arbitrarily and if disproportionate to the reasons purportedly justifying such placement. . . .  Review of the evidence presented indicates that many prisoners are forced to endure conditions of administrative segregation which are plainly disproportionate to the offenses, if any, which led to their confinement therein."), *aff'd in part sub nom. Toussaint v. Yockey*, 722 F.2d 1490 (9th Cir. 1984); *Allen v. Nelson*, 354 F. Supp. 505, 510-11 (N.D. Cal.) ("[T]he language of the Eighth Amendment itself is expressed in words of proportionality. Thus, where punitive segregation is imposed for violation of prison rules, the issue often becomes whether the prison penalty is disproportionate to the offense."), *aff'd*, 484 F.2d 960 (9th Cir. 1973).  These opinions draw an analytical line between situations "in which the physical conditions [of prison] are determined to be so shocking and barbarous that the confinement amounted to cruel and unusual punishment" and situations that "revolve around the formula that a particular solitary confinement constitutes levying a disproportionate penalty against the prisoner. . . . Thus, where punitive segregation is imposed for violation of prison rules, the issue often becomes whether the prison penalty is disproportionate to the offense."  *Allen*, 354 F. Supp. at 510-511.

In the FAC, the Court understood plaintiff to be bringing a civil rights claim that he had been accused of possessing gang-related artwork in violation of prison rules; that he had been placed in solitary confinement as punishment for this rules violation; and that the duration of his term in solitary confinement was so disproportionate to the rules violation as to constitute a violation of the Eighth Amendment.  *See* FAC ¶¶ 11, 22, 24, 50-52 (appearing to argue that plaintiff was retained in solitary confinement because of a rules violation).  It has now been made clear that plaintiff was placed in Ad-Seg as a matter of administration, rather than in solitary confinement as a matter of punishment.  *See supra*, III.B.1.  Because plaintiff was not being punished, there is no need for the Court to examine whether any punishment was disproportionate.

23

1    *See Allen*, 354 F. Supp. at 511 (finding, where prisoner was "not incarcerated" in Ad-Seg "as

2    punishment for committing a prison infraction," that the court did not need to examine

3    proportionality); *see also Fitzgerald v. Procunier*, 393 F. Supp. 335, 342 (N.D. Cal. 1975) ("where

4    no disciplinary infraction has been committed, there can be no relationship, disproportionate or

5    otherwise, between the offense and the confinement"); *Ruiz v. Cate*, No. C 09-2968 MHP (PR),

6    2010 WL 546707, at *4 (N.D. Cal. Feb. 10, 2010) (rejecting argument that placing inmate in SHU

7    on the basis of gang affiliation was "disproportionate," because the decision "is an administrative

8    matter rather than a disciplinary matter"), *aff'd,* 436 F. App'x 760 (9th Cir. 2011).  Accordingly,

9    plaintiff's claim that his Ad-Seg retention was a disproportionate punishment fails.

### 3.    Plaintiff Cannot State An Eighth Amendment Claim For Cruel And Unusual Punishment Or Deliberate Indifference.

12       In the FAC, Plaintiff alleged claims for cruel and unusual punishment, *see* FAC ¶¶ 65-68,

13    93-94, which the Court found not cognizable, *see generally*, Screening Order.  In the Opposition,

14    plaintiff appears either to attempt to resuscitate his claim that retention in Ad-Seg constituted cruel

15    and unusual punishment, or to attempt to state a new Eighth Amendment claim that retaining

16    plaintiff in Ad-Seg constituted a deliberate indifference to plaintiff's safety.  *See* Opp. at 11.

17       To the extent plaintiff attempts to state a new Eighth Amendment claim for indifference to

18    safety, the Court will not consider such a claim because defendants did not receive "fair notice"

19    that plaintiff intended to base a claim on these grounds.  *See Pickern v. Pier 1 Imports (U.S.), Inc.*,

20    457 F.3d 963, 969 (9th Cir. 2006) (affirming summary judgment where the complaint did not give

21    fair notice of the factual basis for a claim raised for first time in opposition to summary judgment);

22    *see also Castillo v. Wells Fargo Bank, N.A.*, 554 F. App'x 646, 647 (9th Cir. 2014) (same, where

23    plaintiff pled a retaliation claim but "failed to put [defendant] on notice of her retaliation claims

24    arising from the denial of her transfer request"); *see also Saif'ullah v. Cruzen*, No. 15-CV-01739

25    LHK, 2017 WL 4865601, at *3 (N.D. Cal. Oct. 26, 2017) (rejecting a claim raised for the first

26    time in opposition), *aff'd,* 735 F. App'x 415 (9th Cir. 2018); *Smith v. Cruzen*, No. 14-CV-04791

Case No. 18-CV-05326-LHK
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.

United States District Court
Northern District of California

1    LHK, 2017 WL 4865565, at *3 (N.D. Cal. Oct. 26, 2017) (same), *aff'd,* 735 F. App'x 434 (9th

2    Cir. 2018).

3           To the extent plaintiff attempts to resuscitate his claim for cruel and unusual punishment,

4    defendants are correct that such a claim fails.  *See* MSJ at 19 (citing opinion stating that Ad-Seg is

5    not a cruel and unusual punishment).  The Ninth Circuit has long held that an indeterminate

6    sentence in Ad-Seg, without more, does not constitute cruel and unusual punishment in violation

7    of the Eighth Amendment.  *See Anderson v. County of Kern*, 45 F.3d 1310, 1315-16 (9th Cir.

8    1995) (no contact with any other inmate in administrative segregation, either for exercise, day

9    room access or otherwise not cruel and unusual punishment), *cert. denied*, 516 U.S. 916 (1995).

10          *Anderson* was a class action brought by inmates housed in Ad-Seg.  *See id.* at 1316.  The

11   inmates challenged their inability to interact with other inmates, either during a period of exercise

12   or dayroom use, as violating the Eighth Amendment.  *See id.*  The Ninth Circuit observed that

13   "administrative segregation, even in a single cell for twenty-three hours a day, is within the terms

14   of confinement ordinarily contemplated by a sentence."  *Id.*  Accordingly, "the confinement at

15   issue [in that case] [did] not rise to the level of" an Eighth Amendment violation.  *Id.*; *see also*

16   *Toussaint v. Yockey*, 722 F.2d 1490, 1494 n.6 (9th Cir. 1984) (more than usual hardships

17   associated with administrative segregation required to state Eighth Amendment claim).

18          Courts have repeatedly interpreted *Anderson* to mean that "[a]n indeterminate sentence in

19   administrative segregation, without more, does not constitute cruel and unusual punishment in

20   violation of the Eighth Amendment."  *Hallman v. Cate*, No. C 10-3548 LHK PR, 2010 WL

21   4393902, at *1 (N.D. Cal. Oct. 28, 2010).[4]  Indeed, since *Anderson* the Ninth Circuit specifically

22

23   ───────────────

     [4] *See also Collins v. Williams*, 536 F. App'x 706, 707 (9th Cir. 2013) (citing *Anderson* for the
24   proposition that administrative segregation does not violate the Eighth Amendment); *Perkins v.
     Crum*, 476 F. App'x 136, 137 (9th Cir. 2012) (same); *Amadeo v. Castellaw*, 371 F. App'x 763, 764 (9th Cir. 2010) (same); *Mitchell
25   v. Minkin*, 178 F.3d 1300 n.4 (9th Cir. 1999) (unpublished) (same); *Ernest v. Davis*, No. 16-CV-
     03655-LB, 2017 WL 11435162, at *4 (N.D. Cal. Mar. 20, 2017) (same); *France v. Allman*, No.
26   15-CV-04078-JSC, 2016 WL 7439577, at *3 (N.D. Cal. Dec. 27, 2016) (same); *Arizmendi v.
     Seman*, No. 13-CV-04716-YGR (PR), 2015 WL 4572430, at *16 (N.D. Cal. July 29, 2015)
27   (same); *Phillips v. Bramucci*, No. C 15-01533 EJD (PR), 2015 WL 4452142, at *6 (N.D. Cal. July
     20, 2015) (same)*; Viera v. Lewis*, No. C 12-1497 RS (PR), 2014 WL 3853142, at *4 (N.D. Cal.

28

United States District Court
Northern District of California

examined PBSP's Ad-Seg unit and concluded that administrative placement in that unit does not constitute cruel and unusual punishment. *See Griffin*, 741 F.3d at 21 (finding the district court abused its discretion in concluding that prisoner's twenty-month confinement in PBSP's Ad-Seg unit violated an earlier injunction, which earlier injunction was predicated on the violation of prisoner's Eighth Amendment rights in PBSP's SHU).

Ninth Circuit precedent squarely bars a claim that plaintiff's twenty-seven-month retention in Ad-Seg was cruel, and the Court is bound by such precedent. *See Griffin*, 741 F.3d 10 (rejecting Eighth Amendment claim predicated on twenty-month Ad-Seg confinement); *see also Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) ("The district court does not have the authority to ignore circuit court precedent . . . ."); *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1080 (9th Cir. 2020) (Nelson, D., concurring) ("[B]y deciding this issue in a published opinion, the *Ward* majority's pronouncement of California state law now binds any federal district court in the Ninth Circuit that might disagree with *Ward* . . . because district courts do 'not have the authority to ignore circuit court precedent' . . . ."). Accordingly, plaintiff's claim was not cognizable under Ninth Circuit precedent.

Because plaintiff's retention in Ad-Seg was administrative, rather than disciplinary, plaintiff's claim for disproportionate punishment fails. As explained above, a claim that plaintiff's retention in Ad-Seg was cruel and unusual is not cognizable. **Accordingly, the Court GRANTS defendants' motion for summary judgment as to plaintiff's Eighth Amendment claim.**

---

Aug. 4, 2014) (same); *Ferrera v. Lewis*, No. C 11-00019 SBA (PR), 2013 WL 3829264, at *7 (N.D. Cal. July 23, 2013) (same); *Anderson v. Deleon*, No. C 12-6055 SI PR, 2013 WL 892276, at *4 (N.D. Cal. Mar. 8, 2013) (same); *Shotwell v. Brandt*, No. C 10-5232 CW PR, 2012 WL 6569402, at *3 (N.D. Cal. Dec. 17, 2012) (same); *McDaniel v. Grounds*, No. C 11-0555 WHA PR, 2011 WL 1113477, at *2 (N.D. Cal. Mar. 25, 2011) (same); *Reyes v. Horel*, No. C 08-4561 RMW PR, 2010 WL 1222286, at *8 (N.D. Cal. Mar. 24, 2010) (same); *Acuna v. Chrones*, No. C 07-5423 VRW (PR), 2008 WL 818522, at *2 (N.D. Cal. Mar. 25, 2008) (same); *Andrade v. Gonzalez*, No. C02-4019 JF(PR), 2007 WL 1241946, at *4 (N.D. Cal. Apr. 27, 2007) (same); *Hart v. Cambra*, No. C 96-0924 SI, 1997 WL 564059, at *8 (N.D. Cal. Aug. 22, 1997) (same), *aff'd*, 161 F.3d 12 (9th Cir. 1998).

Case No. 18-CV-05326-LHK
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.

1

2

**C.      Plaintiff Has Raised Triable Issues Of Fact As To Whether His Fourteenth Amendment Due Process Rights Were Violated.**

3       Plaintiff argues that his retention in Ad-Seg violated his Fourteenth Amendment right to

4   due process.  Specifically, plaintiff argues that he should not have been retained in Ad-Seg based

5   on a suspected gang tie, and that he was entitled to, but did not receive, periodic meaningful

6   reviews by PBSP's ICC of plaintiff's retention in Ad-Seg.  The Court will examine each argument

7   in turn.

8       The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects

9   individuals against governmental deprivations of life, liberty or property without due process of

10  law.  Interests that are procedurally protected by the Due Process Clause may arise from two

11  sources: the Due Process Clause itself and laws of the states.  *See Meachum v. Fano*, 427 U.S.

12  215, 224-27 (1976).  In the prison context, these interests are generally ones pertaining to liberty.

13  Changes in conditions so severe as to affect the sentence imposed in an unexpected manner

14  implicate the Due Process Clause itself, whether or not they are authorized by state law.  *See*

15  *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980)

16  (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary

17  administration of psychotropic drugs)).  Deprivations that are less severe or more closely related to

18  the expected terms of confinement may also amount to deprivations of a protected liberty interest,

19  provided that the liberty in question is one of "real substance."  *See Sandin*, 515 U.S. at 477-87.

20  An interest of "real substance" will generally be limited to freedom from restraint that imposes an

21  "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"

22  or "will inevitably affect the duration of [a] sentence."  *Id.* at 484, 487.  The placement of an

23  inmate in a highly restrictive housing setting may amount to a deprivation of a liberty interest of

24  "real substance" within the meaning of *Sandin*.  *See Wilkinson v. Austin*, 545 U.S. 209, 224

25  (2005).

26      When there is a deprivation of a liberty interest of real substance, the procedural

27  protections to which the prisoner is entitled depend on whether the deprivation results from a

28

Case No. 18-CV-05326-LHK
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.

United States District Court
Northern District of California

disciplinary decision or an administrative decision.  If it is a disciplinary decision, the procedural

protections required are: written notice, time to prepare for the hearing, a written statement of

decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid

to the accused where the inmate is illiterate or the issues are complex.  *Wolff v. McDonnell*, 418

U.S. 539, 564-67 (1974).  The Due Process Clause requires only that prisoners be afforded those

procedures mandated by *Wolff* and its progeny; it does not require that prisons comply with their

own, more generous procedures.  *See Walker v. Sumner*, 14 F.3d 1415, 1419–20 (9th Cir. 1994),

*overruled on other grounds by Sandin*, 515 U.S. 472.  A prisoner's right to due process is violated

"only if he [is] not provided with process sufficient to meet the *Wolff* standard." *Id.* at 1420.  There

also must be some reliable evidence to support the disciplinary decision.  *See Superintendent v.

Hill*, 472 U.S. 445, 454 (1985); *Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987).

"Ascertaining whether [the some evidence] standard is satisfied does not require examination of

the entire record, independent assessment of the credibility of witnesses, or weighing of the

evidence.  Instead, the relevant question is whether there is any evidence in the record that could

support the conclusion reached" by the disciplinary hearing officer. *Superintendent*, 472 U.S. at

455-56.

     "[A] lesser quantum of process is due when a prisoner is placed in administrative

segregation than is required by *Wolff*." *See Toussaint v. McCarthy*, 801 F.2d 1080, 1099 (9th Cir.

1986) (citing *Hewitt*, 459 U.S. at 476).  For an administrative decision, due process requires that

prison officials hold an informal non-adversary hearing within a reasonable time after the prisoner

is segregated, inform the prisoner of the reason segregation is being considered, and allow the

prisoner to present his views. *Toussaint*, 801 F.2d at 1100, 1104-05.

     Here, defendants concede that "prisoners have a liberty interest in avoiding extended

confinement in segregation housing without meaningful, periodic review of their housing

placement."  MSJ at 19 (citing *Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 987–88 (9th Cir.

2014)).  Accordingly, the Court assumes that plaintiff has identified a potential liberty interest and

examines only whether plaintiff was given the required level of process.

Case No. 18-CV-05326-LHK
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1       **1.**     **Plaintiff's Placement In Ad-Seg Did Not Violate His Fourteenth**
2                     **Amendment Right to Due Process.**

3      Defendants argue, and plaintiff appears to concede, that plaintiff's initial placement in Ad-

4 Seg on May 2, 2017, was appropriate. *See* MSJ at 3 (arguing that "[p]laintiff's primary grievance"

5 concerns hearings on and after August 3, 2017); *see also* FAC ¶ 66 (stating that plaintiff's life was

6 in danger in general population from the moment plaintiff requested placement in SNY); *see also*

7 Tartaglio Depo., Ex. A at 47:25 to 48:4 ("The fact that I request[ed] SNY literally puts my life [ ]

8 in danger."), 102:22-23 ("If I go to B Yard . . . I'd be murdered instantly."). Accordingly, the

9 Court concludes that plaintiff's initial placement in Ad-Seg was appropriate.

10      Plaintiff was initially placed in Ad-Seg on May 2, 2017 because plaintiff requested to be

11 transferred to SNY. On August 3, 2017, the PBSP ICC decided to retain plaintiff in Ad-Seg for a

12 different reason: because plaintiff was being investigated for suspected gang ties. Although

13 plaintiff was already in Ad-Seg on that date, the August 3, 2017 hearing may be construed as a

14 separate decision to place plaintiff in Ad-Seg. Accordingly, the Court will also examine whether

15 plaintiff's retention in Ad-Seg on and after the August 3, 2017 ICC hearing was appropriate.

16      As noted above, plaintiff was entitled to minimal process before being placed in Ad-Seg.

17 Plaintiff does not dispute that he received a hearing on August 3, 2017, in which plaintiff was

18 informed of the reason he was being placed in an isolated condition and was able to present his

19 views. *See generally*, Opp.; *see also* FAC ¶ 30 (describing hearing); *see also Toussaint*, 801 F.2d

20 at 1100, 1104-05 (identifying the process due when a prisoner is isolated for administrative

21 reasons). Accordingly, the Court concludes that plaintiff received the due process required by the

22 Fourteenth Amendment before he was placed in Ad-Seg.

23       **2.**     **Plaintiff Raised Material Issues Of Fact As To Whether His Retention**
24                     **In Ad-Seg Violated His Fourteenth Amendment Right to Due Process.**

25      Plaintiff argues that he was retained in Ad-Seg without meaningful periodic review. FAC

26 ¶¶ 75-88. Defendants argue that plaintiff received reviews that were both meaningful and

27 periodic. *See* MSJ at 20-24.

28

Case No. 18-CV-05326-LHK
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.

1

#### a.      Plaintiff Received Periodic Reviews.

Defendants argue that, as plaintiff received four reviews in the approximately nine months

that he was incarcerated in Ad-Seg at PBSP, the periodic review requirement was met.  *See* MSJ at

20-21 (chronicling plaintiff's hearings before the ICC).  Plaintiff concedes that he received

"periodic" reviews, but argues the reviews were not "timely" because, under CDCR regulations,

plaintiff should have received earlier reviews.  *See* Opp. at 26-27.  Plaintiff specifically appears to

challenge defendants' provision of a hearing on August 3, 2017, twenty-four days after plaintiff's

original administrative segregation expired on July 10, 2017, *see* FAC ¶¶ 10, 30; the provision of a

fourth hearing on October 26, 2017, four days after the expiration of the extension the CSR

auditor gave PBSP to explain its prolonged detention of plaintiff, *see id*. ¶¶ 35-37; and the

provision of a validation hearing with the UCC eighty-seven days after plaintiff's gang validation

investigation concluded, rather than within thirty days as required by CDCR regulations; *see id*. ¶¶

38-42.  In all, these delays total eighty-five days.

As noted above, the Fourteenth Amendment right to due process does not require a state

prison to comply with its own procedures that might be more generous than those federally

required.  *See Walker*, 14 F.3d at 1419–20.  In other words, "'if state procedures rise above the

floor set by the due process clause, a state could fail to follow its own procedures yet still provide

sufficient process to survive constitutional scrutiny.'"  *Id*. at 1420 (quoting *Rogers v. Okin*, 738

F.2d 1, 8 (1st Cir. 1984)).  This point is critical because it shows the futility of plaintiff's

argument. Plaintiff argues about procedures that supposedly were required by the CDCR's

Department Operations Manual and the California Code of Regulations.  Although those rules and

regulations might help one understand how the disciplinary and classification procedures operated,

they are beside the point when it comes to figuring out what is required to satisfy the Fourteenth

Amendment right to due process. Instead, this Court must focus on case law applying the U.S.

Constitution to understand the procedural requirements necessary to satisfy the Fourteenth

Amendment right to due process.

Case No. 18-CV-05326-LHK
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.

Even if plaintiff is correct that he should have received earlier reviews under state prison regulations, *see* Opp. at 19, he points only to those regulations rather than to what is federally required.  The Court has found no case law stating that a cumulative 85-day delay is so significant that the reviews are no longer considered periodic.  In fact, the Ninth Circuit has found that providing reviews every 120 days is enough to fulfill due process.  *See Blocker v. Kernan*, 29 F.3d 630 (9th Cir. 1994) ("Blocker receives a periodic review of his retention in administrative segregation every 120 days. Accordingly, Blocker's continued detention in administrative segregation does not violate his right to due process.").  The delay suffered by plaintiff, though unfortunate, does not rise to a violation of the Fourteenth Amendment.

> **b.** **Plaintiff Has Raised A Disputed Issue Of Material Fact As To Whether He Received Meaningful Reviews.**

Defendants argue that the reviews plaintiff received were also "meaningful."  *See* MSJ at 23-24.  Defendants argue that these reviews were "meaningful" because the ICC at PBSP "had the authority to recommend" plaintiff be transferred out of Ad-Seg, and because the ICC at CSP-Cor actually transferred plaintiff out of Ad-Seg.  *See id*. at 23.

Defendants' reliance on the actions taken by the CSP-Cor ICC is misplaced.  As noted above, plaintiff separately challenges events at CSP-Cor in a different forum.  *See* Opp. at 10.  On this basis, the Court declined to consider plaintiff's request to expunge gang validations from the File.  *See supra* I.C.1.  Defendants cannot simultaneously argue that the Court should disregard hearings that occurred at CSP-Cor for purposes of expungement, while simultaneously relying on those hearings to defeat plaintiff's claim that his Fourteenth Amendment right to due process was violated.

Defendants' only argument that plaintiff's reviews at PBSP were "meaningful" is that the PBSP ICC "had the authority" to transfer plaintiff out of Ad Seg.  To support this argument, defendants rely on *Brown v. Oregon Department of Corrections*, in which the Ninth Circuit held that a committee's "reviews were essentially meaningless" because the committee in that case lacked the authority to transfer the plaintiff out of isolation.  751 F.3d at 987–88.  Defendants read

31

United States District Court
Northern District of California

1   *Brown* to hold that a hearing before an empowered reviewing committee is automatically

2   meaningful, regardless of content.  This is an incorrect reading of that case.  *Brown* held that if a

3   committee has no authority, then the reviews cannot be meaningful.  *See id*. The contrapositive of

4   this statement is that if a review was meaningful, then a committee had to have authority.  In other

5   words, *Brown* set a floor, not a ceiling as defendants believe.  *Cf. Ashker v. Newsom*, No. 09-CV-

6   05796-CW (RMI), 2019 WL 330461, at *12 (N.D. Cal. Jan. 25, 2019) (extending the applicability

7   of the *Ashker* Settlement, in part because although prisoners were given parole hearings under the

8   *Ashker* Settlement, this did not necessarily mean that prisoners were given "*meaningful* parole

9   hearings at which they may challenge a gang validation," and finding unreliable the kinds of

10  evidence CDCR used to validate prisoners as gang members) (emphasis in original).

11       Plaintiff argues that the PBSP ICC's reviews could not have been meaningful because they

12  did not comply with defendants' obligations under the settlement reached in *Ashker v. Brown*

13  ("*Ashker* Settlement").  *See* Opp. at 2, 18, 19, 21-26 (citing Dkt. No. 424, Ex. A, Case No. No. 09-

14  5796-CW (N.D. Cal. Sept. 1, 2015)).  In *Ashker*, a class of prison inmates argued that CDCR's

15  practice of "assign[ing] inmates to the SHU based solely on their membership in or association

16  with prison gangs, without regard for the inmate's 'actual behavior'" violated the class's

17  Fourteenth Amendment right to due process.  *Ashker v. Brown*, No. C 09-5796 CW, 2013 WL

18  1435148, at *1 (N.D. Cal. Apr. 9, 2013).  CDCR settled with the class of inmates.  *See Ashker*

19  Settlement.  The *Ashker* Settlement was signed by Jeffrey Beard, then-Secretary of CDCS, on

20  August 31, 2015.  *See id*. at 22.  It was approved by the United States District Judge Claudia

21  Wilken on October 6, 2015.  *See* Dkt. No. 440, Case No. No. 09-5796-CW (N.D. Cal. Sept. 1,

22  2015).  The *Ashker* Settlement thus bound CDCR well before the alleged constitutional violations

23  occurred here.

24       The *Ashker* Settlement provides that "CDCR shall not place inmates into a[n] . . .

25  Administrative Segregation. . . . Program solely on the basis of their validation status."  *See*

26  *Ashker* Settlement ¶ 13.  Plaintiff argues, and defendants appear to agree, that regardless of why

27  plaintiff was initially placed in Ad-Seg, after August 3, 2017 plaintiff was retained in Ad-Seg

28  

32

Case No. 18-CV-05326-LHK
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.

solely based on his gang validation.  *See generally*, MSJ & Opp.  Thus, it appears that defendants' retention of plaintiff in Ad-Seg solely on this basis violated the *Ashker* Settlement.  *Cf. Santos v. Holland*, 761 F. App'x 707, 712 (9th Cir. 2019) (Friedland, J., dissenting) (arguing that a plaintiff should bring in civil rights, rather than habeas, his claim that "he was confined in the SHU precisely because he had been validated as a member of the Mexican Mafia" and noting that "the state of California reached the settlement in *Ashker*, agreeing that it would no longer place inmates in solitary confinement solely on the basis of their gang validation status").  Defendants do not explain how the PBSP ICC could have given plaintiff a meaningful review, while simultaneously ignoring, or deciding to violate, the *Ashker* Settlement.  Plaintiff's argument, that defendants could not both have given him a meaningful review and violated the *Ashker* Settlement, is well-taken.

Defendants counter that plaintiff has not shown the ICC's reviews were meaningless because *Ashker* "concerned gang members' extended confinement in [PBSP's] administrative segregation unit" rather than "where an inmate should be housed when he requests SNY transfer but has suspected gang ties."  Reply at 7.  Although defendants are correct that the *Ashker* Settlement addresses housing for validated gang members, this argument would have the Court afford *suspected* gang members less due process than *proven* gang members.  This is untenable.

Because plaintiff argues that the PBSP ICC's reviews could not have been meaningful because his confinement violated the *Ashker* Settlement, and defendants do not plausibly rebut plaintiff's argument, the Court concludes that plaintiff has raised a disputed issue of material fact as to whether the ICC hearings at PBSP constituted meaningful review.  Thus, plaintiff has raised a disputed issue of material fact as to whether plaintiff received due process.

### 3.   Defendants Are Not Entitled To Qualified Immunity As To Plaintiff's Fourteenth Amendment Due Process Claim.

Having found a disputed issue of material fact, the Court next considers whether defendants are entitled to qualified immunity.

Government officials are entitled to qualified immunity from suit if the officials did not "violate clearly established statutory or constitutional rights of which a reasonable person would

33

1    have known." *Pearson*, 555 U.S. at 231. A right is clearly established if it was "sufficiently clear

2    that every reasonable official would have understood that what he is doing violates that right."

3    *Saucier*, 533 U.S. at 201.  Although case law need not be directly on point, "existing precedent

4    must have placed the statutory or constitutional question beyond debate." *Kisela*, 138 S. Ct. at

5    1152.  However, the Court must also consider whether the facts of the case at bar, when "taken in

6    the light most favorable to" the plaintiff, are "fairly distinguishable" from the established case law.

7    *Orn v. City of Tacoma*, 949 F.3d 1167, 1179 (9th Cir. 2020).

8         Defendants argue that the Court should find they are entitled to qualified immunity

9    because there is no clearly established law "discussing whether it is unconstitutional to retain an

10   inmate in administrative segregation while gang investigators determine whether he is a suitable

11   candidate for a Sensitive Needs Yard."  Reply at 8.  Defendants' argument misconstrues plaintiff's

12   position.  Plaintiff does not argue that defendants' acts were unconstitutional because they violated

13   the *Ashker* Settlement.  Instead, plaintiff argues that any review he was given could not have been

14   meaningful because, at the end of each review, defendants either ignored or decided to violate the

15   *Ashker* Settlement.  In other words, the breach of the *Ashker* Settlement is not a constitutional

16   violation, but it is evidence that defendants may have violated plaintiff's constitutional rights.

17   Because plaintiff has raised a disputed issue of material fact as to whether defendants gave

18   plaintiff meaningful reviews, defendants are not entitled to qualified immunity.  *See Lira v. Dir. of*

19   *Corr.*, No. C-00-0905 SI, 2008 WL 619017, at *12 (N.D. Cal. Mar. 4, 2008) (holding, where

20   plaintiff "set forth triable issues of fact" as to whether he was "provided with meaningful post-

21   validation hearings," that defendants were not entitled to qualified immunity), *aff'd sub nom. on*

22   *other grounds, Lira v. Herrera*, 448 F. App'x 699 (9th Cir. 2011).

23        In arguing they are entitled to qualified immunity, defendants suggest that their only

24   options were to return plaintiff to general population, which was likely to result in harm to

25   plaintiff; move plaintiff to SNY, which may have put other prisoners at risk; or retain plaintiff in

26   Ad-Seg, which may have violated plaintiff's Fourteenth Amendment right to due process.  *See*

27   Reply at 7-8.  Defendants argue that they are entitled to qualified immunity because, faced with

28

34

three distasteful options, they chose the most reasonable.  *See id.*  There are two problems with this argument.  First, that is not the test for qualified immunity.  The qualified immunity test asks whether defendants violated a well-established right.  Second, even if defendants accurately stated the test, the record in this case reveals that defendants had at least two additional options.  Plaintiff could have been placed into Restricted Custody General Population, as was recommended by Officer Sturdevant.  *See* MSJ at 16 ("Sturdevant recommended that Plaintiff be placed in 'Restricted Custody General Population,' which Plaintiff admitted would not be 'solitary confinement.'"); *see also* Bell Decl. ¶ 12 (noting that PBSP's ICC "could have . . . requested that" plaintiff he considered "for specialized housing such as Restrict[ed] Custody General Population").  Alternatively, plaintiff could have been transferred to the "non-SNY facility" at CSP-Sac in which he now founds himself.  *See id.* at 22 (stating that, even after having been re-validated as a member of the Aryan Brotherhood, plaintiff was transferred to Facility A at CSP-Sac).  Thus, defendants had other options that did not violate a well-established right.

Because plaintiff has raised triable issues of material fact as to whether defendants violated his due process, and because defendants are not entitled to qualified immunity, the Court DENIES the MSJ as to plaintiff's Fourteenth Amendment due process claim.

## IV.  CONCLUSION

Defendants' MSJ is **GRANTED** in part and **DENIED** in part.  Specifically, the MSJ is granted as to plaintiff's First and Eighth Amendment claims as to all defendants but denied as to plaintiff's Fourteenth Amendment claim.  For the reasons discussed above, Representative Garcia is dismissed from this litigation without prejudice.  Accordingly, the only issue that remains for trial is whether plaintiff was denied meaningful review of his PBSP Ad-Seg confinement by Officers Sturdevant and Bradbury, Sergeants Anderson and Schrag, Counselor Bond, Captain Wilcox, Chief Deputy Warden Bell, and Investigators Parry, Puente, and Schaad.

Prior to setting this case for trial and appointing pro bono counsel to represent plaintiff for that purpose, the Court refers this case to U.S. Magistrate Judge Robert M. Illman pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings.  The proceedings shall take place

Case No. 18-CV-05326-LHK
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    within **ninety (90) days** of the filing date of this order.  U.S. Magistrate Judge Illman shall

2    coordinate a time and date for a settlement conference with all interested parties or their

3    representatives and, within **ten (10) days** after the conclusion of the settlement proceedings, file

4    with the Court a report regarding the prisoner settlement proceedings.

5          The Clerk of the Court shall mail a copy of this order to U.S. Magistrate Judge Illman in

6    Eureka, California.  The instant case is **STAYED** pending the settlement conference proceedings.

7    Until further order of the Court, the Clerk shall **ADMINISTRATIVELY CLOSE** the file, which

8    is a purely internal administrative procedure that does not affect the rights of the parties.

9          Plaintiff is reminded that it is his responsibility to prosecute this case.  Plaintiff's

10    responsibility continues throughout settlement conference proceedings.  Accordingly, plaintiff

11    must continue to keep the Court informed of any change of address by filing a separate paper with

12    the Clerk headed "Notice of Change of Address."  He also must comply with the Court's orders in

13    a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute

14    pursuant to Federal Rule of Civil Procedure 41(b).

15          **IT IS SO ORDERED.**

17    DATED: May 15, 2020        _Lucy H. Koh_

18                       LUCY H. KOH
                           UNITED STATES DISTRICT JUDGE

Case No. 18-CV-05326-LHK
ORDER GRANTING IN PART AND DEN. IN PART MOT. FOR SUMM. J.